**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANGELEKA M. SMITH WINSTON,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:21-CV-0195-DMC<br><br><br><br>MEMORANDUM OPINION AND ORDER |

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, ECF Nos. 6 and 7, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c); see also ECF No. 13. Pending before the Court are the parties' briefs on the merits, ECF Nos. 12 and 14.

        The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Court affirms the decision below.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

> Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;
>
> Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;
>
> Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///

///

///

///

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on April 5, 2013.  See CAR, pg. 29.[1] In the application, plaintiff claims disability began on May 22, 2007.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 21, 2016, before Administrative Law Judge ("ALJ") Serena S. Hong.  In an April 20, 2016, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): degenerative disc disease, obesity, depression, learning disability, and borderline intellectual functioning;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: light work; she is able to stand and walk for four hours; she may require a break for one to two minutes after standing and walking for one hour; she is unable to climb ladders, ropes, or scaffolds; she is able to perform occasional postural activities; she needs to avoid concentrated exposure to heat, vibration, and hazards; she is limited to simple, repetitive tasks with no public contact;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 31-38.

The Appeals Council declined review on July 14, 2017, and Plaintiff filed an action for judicial review.  See Winston v. Commissioner of Social Security, 2:17-CV-1901-AC. Pursuant to the parties' stipulation, Plaintiff's prior action for judicial review was remanded for further proceedings before the agency.  On remand, the Appeals Council directed that additional vocational expert testimony be obtained to resolve an apparent conflict between the original vocational expert testimony and definitions contained within the Dictionary of Occupational Titles.  See CAR, pg. 1028.

---

[1] Citations are to the Certified Administrative Record (CAR) lodged on June 23, 2021, ECF No. 9.

A second hearing was held before the same ALJ on September 24, 2019. See id. at 954. In a November 20, 2019, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): degenerative disc disease, obesity, depression, learning disability, borderline intellectual functioning, and right knee tear;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: light work; she cannot climb ladders, ropes, or scaffolds; she can perform postural maneuvers such as stooping, crouching, and crawling on an occasional basis; she must avoid concentrated exposure to extreme heat, vibration, and hazards such as unprotected heights and moving machinery; she is limited to performing simple, repetitive tasks;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 654-63.

After the Appeals Council declined further review on December 8, 2020, this appeal followed.

### III. DISCUSSION

In her motion for summary judgment, Plaintiff argues: (1) the Commissioner's final decision arose from an unconstitutional administrative process; (2) the ALJ impermissibly rejected Plaintiff's subjective statements and testimony; and (3) the ALJ erred in rejecting lay witness evidence.

**A.  Plaintiff's Statements and Testimony**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons.

1   See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.

2   See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

3   Rather, the Commissioner must identify what testimony is not afforded weight and

4   what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence

5   in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible

6   must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155,

7   1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and

8   Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

9   If there is objective medical evidence of an underlying impairment, the

10  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

11  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

12  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

17  80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen,

18  799 F.2d 1403 (9th Cir. 1986)).

19  The Commissioner may, however, consider the nature of the symptoms alleged,

20  including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

21  947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may

22  also consider:  (1) the claimant's reputation for truthfulness, prior inconsistent statements, or

23  other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment

24  or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records;

25  and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.

26  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

27  claimant cooperated during physical examinations or provided conflicting statements concerning

28  drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

At Step 4, the ALJ considered Plaintiff's subjective statements and testimony to determine her residual functional capacity. See CAR, pgs. 959-961. The ALJ summarized Plaintiff's statements and hearing testimony as follows:

> In her August 28, 2013 disability report, the claimant alleged that the following physical and mental conditions limit her ability to work: lower back problems, bipolar, depression, and high blood pressure (exhibit 2E). The claimant reported that she is 5'5" and weighs 260 pounds, which establishes the presence of obesity. In her September 28, 2013 function report, the claimant explained that, when she has a job, she needs to take frequent breaks because she is unable to stand or sit for long periods of time (exhibit 4E). The claimant remarked that her doctor advised that she should not work for more than four hours per day. The claimant reported that she is able to engage in a wide range of daily activities including caring for her two young children with assistance from her husband, and preparing meals, light cleaning, and shopping in stores and online. The claimant reported that she experiences sleepiness as a medication side effects, and sleeps as much as she can.
> At the prior hearing held on January 21, 2016, the claimant testified that she is unable to work because she needs to sleep during the day, and she finds it hard to be around other people. The claimant testified that she does not sleep well at night, and her medications cause drowsiness. The claimant further testified that she goes "off the wire" and has panic attacks. The claimant testified that she waits outside of the waiting room at her doctor's office if there are other people waiting inside. When asked how often she leaves her home, the claimant replied, "I don't." When asked how this affects her children, the claimant indicated that her son plays outside near the window where she can watch him from inside. The claimant testified that her husband does everything in terms of caring for her younger child. The claimant testified that she is able to stand and walk for only 30 minutes at a time, and she has a hard time going up and down stairs, and there is no position that is comfortable for her. The claimant testified that she was in special education starting in middle school, and she reads and writes at a 5th or 6th grade level. The claimant testified that she cannot read the books her seven-year-old son brings home from school. The claimant testified that she thought she could work as a security guard but when she tried working, she could not write the required reports.
> At the hearing held on September 24, 2019, the claimant testified that she now has three children, and she recently obtained a childcare license and has been working as a self-employed childcare provider for two children. The claimant testified that, prior to starting her own childcare business, she performed IHSS work and she was a teacher assistant in a preschool. The claimant testified that she was previously unable to work because she was depressed and felt "stuck" in her life. The claimant testified that she was having problems with focus, concentration, and meeting new people, and she improved with therapy.

Id. at 960 (errors in original).

The ALJ concluded: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. In making this finding, the ALJ stated:

> As discussed in the prior hearing decision, the claimant's complaints of pain and depression are well documented in the medical record; however, the claimant has received ongoing treatment, with good results (exhibits 6F/14, 15F/3, 15F/16, 15F/46, 14F/5, 15F/51). An MRI in 2011 showed a small L5-S1 disc bulge and mild bilateral neuroforminal narrowing with an L4-5 synovial cyst, which was subsequently aspirated(exhibit 2F/3). An MRI in 2013 showed an L5-S1 disc bulge without significant spinal canal stenosis and mild to moderate foraminal stenosis, with encroachment but no compression of the nerve roots (exhibit 8F/1), representing no change from previous studies (exhibit 8F/3). The claimant reported very severe back pain in March 2015, which improved with steroid injection (exhibit 26F/34-36). Obesity is noted throughout the medical record (exhibits 3F, 6F, 10F, 12F, 14F, 15F, 19F, 22F), and it is likely an exacerbating factor as set forth in Social Security Ruling 19-2p. The medical record was updated in connection with the Appeals Council remand; there is evidence of treatment for non-severe foot problems treated with over-the-counter insoles (exhibit 26F), and routine treatments for non-acute conditions such as a knee injury with radiographic evidence of tear for which no significant treatment was recommended (exhibit 25F/3); hypertension and psoriasis. Mild multi-level degenerative disc disease was shown on x-rays obtained in 2018 (exhibit 25F/46, 25F/52, 25F/54).
> As for the opinion evidence, as discussed in the prior hearing decision, the undersigned gives great weight to the opinions of the State agency medical consultants who reviewed the case file and determined that the claimant is able to perform unskilled, light work with breaks every hour for one to two minutes when standing or walking; occasional climbing of ramps and stairs and no climbing ladders, ropes, or scaffolds; frequent balancing and kneeling; occasional stooping, crouching, and crawling; no concentrated exposure to extreme heat, vibrations, or hazards 9exhibit 1A). Upon reconsideration, the prior physical determination was upheld but an additional mental limitation, i.e., limited public contact, was assessed (exhibit 3A). The undersigned gives great weight to these opinions because they are consistent with the record as a whole; however, the updated record and the claimant's current work activity is inconsistent with a limitation affecting her ability to work with the public.
> The undersigned gives little weight to the January 20, 2016 letter from Evelyn Polk, LMFT (exhibit 23F) because Ms. Polk's September 20, 2019 report reflects that the claimant improved and was able to return to school in 2016, obtain a childcare license, and work successfully exhibit 28F). As discussed in the prior decision, the undersigned finds that the record does not support a June 2015 medical source statement from Sarah

8

> Stadler, M.D., indicating that the claimant has a GAF of 60 and had improved with medications, but would need support through transitions, would be off task 20% of the time, and would have moderate and marked limitations in most areas of mental functioning (exhibit 16F). The undersigned finds that this assessment is inconsistent with Dr. Stadler's treatment notes (exhibits 14F/2), and internally inconsistent in reflected marked limitations in some areas, with a GAF of 60, which represents overall functioning that is only moderately impaired.
> 
> The undersigned gives some weight to the third-party statement from a public health nurse, completed in 2013, indicating that the claimant was able to care for her then-infant and four-year-old children, do housework and prepare light meals, and take her child to school daily and go shopping once per work, with limitations in terms of standing, walking, lifting, and carrying, and with easy fatigability (exhibit 5E). The statement is vague but generally consistent with the residual functional capacity and the claimant's activities.

Id. at 961 (errors in original).

Plaintiff alleges that the ALJ did not provide specific, clear, and convincing reasons for her determination that Plaintiff's testimony was inconsistent with the medical and other evidence in the record. ECF No. 12, pg. 12. Specifically, Plaintiff takes issue with the ALJ's failure to connect any portion of her testimony to the discussion of the medical and other evidence in the record. Id. at 13.

However, the ALJ compared Plaintiff's assertions to other evidence in the record, including her response to conservative treatment. The ALJ explained that the record showed that treatment provided good relief for both pain and depression. CAR, pg. 960 (citing 6F14, 15F3, 15F16, 15F46, 14F5, 15F51/CAR 412, 777, 790, 820, 759, 825). Although the ALJ did not describe in detail what those citations showed, she referred to her earlier decision, which had made specific and thorough findings about those same citations. Id. at 39. The ALJ found that in July 2013, the month before Plaintiff applied for SSI, Plaintiff's sleep and back pain improved with medications and she was walking, going to the farmers' market, had a job interview, and had resumed going to church. Id. at 41 (citing 6F14). She noted that a treating source said in March 2015 that Plaintiff's pain was well controlled with orthopedic manipulation and a TENS unit. Id. at 35 (citing 15F3/CAR 777). The ALJ cited a December 2014 note that Plaintiff's pain was manageable and she was able to perform daily activities, and relief form orthopedic manipulation, id. at 35 (citing 15F16/CAR 790), and that Plaintiff's earlier report of increased pain in May 2014

was because she missed a session of orthopedic manipulation. Id. (citing 15F46/CAR 820). The ALJ found also that in April 2014, Plaintiff said she felt happy from therapy. Id. (citing 15F51/CAR 825). The ALJ finally explained that Plaintiff reported improvement in March 2015 with an epidural steroid injection. Id. at 961 (citing 26F34-36/CAR 1152-54). Notably, even when that relief wore off, Plaintiff reported controlled pain with other treatment. Id. at 777. Numerous other records showed similar improvement from conservative measures. Id. at 407, 585, 731, 746, 825, 830, 904. The ALJ reasonably relied on this evidence of consistent improvement with conservative treatment as a basis for rejecting Plaintiff's claims of disabling symptoms. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (affirming ALJ's finding that improvement with conservative treatment including physical therapy and a TENS unit undermined claims of disabling pain); Warre v. Comm'r of SSA, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"); see also Fry v. Berryhill, 749 Fed. Appx. 659, 660-61 (9th Cir. 2019) (affirming ALJ's reliance on improvement with epidural steroid injections as a basis to reject claims of disabling pain).

As mentioned above, the ALJ noted specifically that Plaintiff had a good response to treatment in 2013, 2014, and 2015, and that conservative measures controlled her allegedly disabling pain in those years. The ALJ understood that Plaintiff alleged disability only through June 2017 and not after. And the ALJ did not use her subsequent ability to work as evidence to reject earlier claims of disability. Thus, the ALJ reasonably relied on consistent improvement during the years before Plaintiff returned to work as evidence that Plaintiff's symptoms during that period were not as limiting as she alleged.

Further, the ALJ explained earlier in her decision that Plaintiff's daily activities conflicted with her allegations of disabling depression and other mental impairments. As the ALJ noted, Plaintiff was able to return to school and obtain certification in early childhood education. CAR, pgs. 957-58 (citing 28F/CAR 1214). She found further that Plaintiff was able to take care of herself and her three minor children. Id. Plaintiff's abilities to care for multiple minor children, attend school, and complete a program in early childhood education, all conflicted with

her allegations of completely disabling depression and anxiety.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (affirming ALJ's reliance on the claimant's ability to attend school and complete a training program as inconsistent with allegations of disability);  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's reliance on the claimant's ability to take care of two minor children as inconsistent with allegations of disability).

The ALJ's finding, with specific citations to the record relevant to Plaintiff's specific symptom allegations, is more than sufficient for this Court, as a reviewing court, to determine that the ALJ did not arbitrarily reject those allegations.  Because the ALJ provided valid reasons supported by substantial evidence for rejecting Plaintiff's symptom allegations, this Court affirms the ALJ's decision.

### B.    Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  When rejecting third party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement.  See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).  The ALJ must also view the record as a whole and may not cite to selected portions without the context of the complete diagnostic picture presented.  Harris v. Kijakazi, 2022 U.S. App. LEXIS 11553, *2 (9th Cir.2022) (citing Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014)).

/ / /

/ / /

At Step 4, the ALJ considered lay witness evidence. See CAR, pg. 961. The ALJ stated:

> The undersigned gives some weight to the third-party statement from a public health nurse, completed in 2013, indicating that the claimant was able to care for her then-infant and four-year-old children, do housework and prepare light meals, and take her child to school daily and go shopping once per work, with limitations in terms of standing, walking, lifting, and carrying, and with easy fatigability (exhibit 5E). The statement is vague but generally consistent with the residual functional capacity and the claimant's activities.

Id.

Plaintiff claims that the ALJ failed to articulate legally sufficient rationale to reject the lay testimonial evidence from the public health nurse, Shirley Reed. ECF No. 12, pg 18. Plaintiff contends that the ALJ relied on some of the witness's testimony relating to the activities she could do but did not use the testimony related to how she needs frequent breaks and assistance while performing the activities. Id. at 20.

The ALJ assigned some weight to Ms. Reed's report, which indicated that Plaintiff could take care of her infant and four-year-old child in 2013, did housework, prepared light meals, took her older child to school daily, and shopped once per week. CAR, pg. 961. The ALJ found the function report overall vague, but states that Ms. Reed's remarks were generally consistent with the residual functional capacity that the ALJ found, i.e., a limited range of light work involving only simple, routine tasks. CAR, pgs. 959, 961. The ALJ discussed the report, explained the weight she gave to it, and how she accounted for Ms. Reed's statements in the residual functional capacity. Plaintiff seems to merely have a different interpretation of Ms. Reed's testimony. Therefore, the Court defers to the ALJ's rational interpretation of the evidence.

### C.  **Constitutionality of Administrative Process**

In her Motion for Summary Judgment, Plaintiff claims that the final decision of the Social Security Commissioner arises from an unconstitutional administrative process and therefore Plaintiff's case should be remanded. ECF No. 12 at 25. This claim challenges the ALJ's authority to hear a case under Seila Law LLC v. CFPB, 140 S.Ct. 2183 (2020), and Collins v. Yellen, 141 S.Ct. 1761 (2021). Id. Plaintiff first alleges that the improper appointment of the

ALJ tainted the administrative proceedings below and mandates remand. Id. Second, Plaintiff contends that regardless of the propriety of the ALJ's appointment, the case should still be remanded because the agency proceeded under an unconstitutional framework during the tenure of Commissioner Saul. Id. at 23. Each argument will be analyzed in turn.

          i.        Improper Appointment of the ALJ

Commissioner Andrew Saul held the office of Commissioner of Social Security as the sole person dischargeable only for cause between June 17, 2019 and July 9, 2021. Ramos v. Comm'r of Soc. Sec., No. 1:20-cv-01606-EPG, 2022 U.S.Dist.LEXIS 5721, *5-6 (E.D.Cal. Jan. 10, 2022). During Commissioner Saul's tenure, the ALJ presided over the hearing and issued the decision on November 20, 2019, and the Appeals Council denied review on December 8, 2020. ECF No. 12 at 24. Plaintiff frames the issue as "whether the improper appointment of the ALJ tainted administrative proceedings below and mandates remand." Id. at 21. Despite this characterization, Plaintiff admits that the ALJ in this case was properly appointed by Acting Commissioner Berryhill in 2018. See ECF No 12 at 24. Because the ALJ was properly appointed, there is no reason to void the actions by the ALJ due to improper appointment. See Ramos, 2022 U.S.Dist.LEXIS 5721 at *9 (citing Collins, 141 S.Ct. at 1787 ("All the officers who headed the FHFA during the time in question were properly appointed. Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void.")).

          ii.       Unconstitutional Framework

Plaintiff also argues that this case should be remanded for the same reasons that cases were remanded in Lucia v. SEC, 138 S.Ct. 2044, 2049 (2018). ECF No. 12 at 23. Her argument is that "the authority vested in the ALJs and the Appeals Council, and the process through which the authority is manifested, is almost identical to that of the Securities and Exchange Commission as analyzed in Lucia, and therefore the structure is unconstitutional." Id. The Motion for Summary Judgment also relies on an Office of Legal Counsel opinion that

considered the Supreme Court's decisions in Seila Law and Collins, as well as the earlier concerns, and concluded that "[w]e believe that the best reading of those decisions compels the conclusion that the statutory restriction on removing the Commissioner is unconstitutional." Id. at 23 (citing 45 Op. O.L.C. __, at Section II.B (July 8, 2021)).

Other federal district courts that considered the Social Security Commissioner's removal power found that the removal clause of 42 U.S.C. § 902(a)(3) did indeed violate the separation of powers doctrine insofar as it granted for-cause removal protection to the Commissioner of Social Security. Lisa Y. v. Comm'r of Soc. Sec., No. C21-5207-BAT, 2021 U.S. Dist. LEXIS 215767, at *16 (W.D. Wash. Nov. 8, 2021); see Ramos, 2022 U.S.Dist.LEXIS 5721 at *5. Although there is no controlling authority on this point, federal district courts agree that to have standing on the claim that the unconstitutional removal provision for the Social Security Commissioner requires remand, the Plaintiff must show some connection between the unconstitutional provision and the unfavorable decision rendered by the ALJ. Rivera-Herrera v. Kijakazi, No. 1:20-cv-01326-GSA 2021 U.S.Dist.LEXIS 225340, at *19 (E.D.Cal. Nov. 21, 2021) ("[G]iven the lack of any controlling or persuasive authority to that effect, the Court will defer to the holdings of the only district courts in this Circuit who have spoken on the issue and found that such claims fail for lack of standing because the denial of disability benefits is not a harm fairly traceable to § 902(a)(3)'s removal provision."); Frank W. v. Kijakazi, No. 20-cv-1439, 2021 U.S. Dist. LEXIS 227031, at *4 (S.D. Cal. Nov. 24, 2021) ("Here, there is no allegation even suggesting a direct nexus between the adjudication of plaintiff's disability claim by the SSA and the alleged separation of powers violation in the removal statute that applies to the Commissioner."); Shaun A. v. Comm'r of Soc. Sec., No. C21-5003-SKV, 2021 U.S. Dist. LEXIS 225120, at *4-6 (W.D. Wash. Nov. 22, 2021) ("Plaintiff cannot show any connection between the unconstitutional limit on Commissioner Saul's removal and the ALJ's decision denying him benefits."); Brinkman v. Kijakazi, No. 2:21-CV-00528-EJY, 2021 WL 4462897, at *2 (D. Nev. Sept. 29, 2021) ("In this case, unlike Seila Law, Plaintiff does not allege facts that support a finding that her injury, the denial of disability benefits, can be or is traced to the conduct of the SSA Commissioner."); Jordan v. Comm'r of SSA, No. CV-21-08022-PCT-DGC,

2022 U.S. Dist. LEXIS 51133, at *11-12 (D. Ariz. Mar. 22, 2022) ("Because Plaintiff has shown no cognizable harm from § 902(a)(3)'s removal provision, he is not entitled to a new administrative hearing."); Ramos, 2022 U.S.Dist.LEXIS 5721 at *9 ("Here, Plaintiff has not shown any connection between the denial of benefits and the unconstitutional removal provision. Accordingly, remand is not warranted.").

        In the instant case, Plaintiff has not met this burden because she does not show the requisite connection between the unconstitutional removal provision and the ALJ's decision denying her benefits.  Id.  There are no facts in the Motion for Summary Judgment that indicate how the decision to deny benefits was affected by the unconstitutional provision.  The only connection drawn between the denial of benefits and the Commissioner's unconstitutional removal provision is Plaintiff's statement that "[a]ny delegation of authority that flows from [the Commissioner's] position is tainted in the same way the improper appointment of ALJs tainted the administrative proceedings in Lucia."  ECF No. 12 at 25.  According to the standard used by other district courts, this connection is insufficient to link the ALJ's decision to the unconstitutional removal provision.  See Rivera-Herrera, 2021 U.S. Dist. LEXIS 225340 at *19.  Therefore, Plaintiff's request for relief based on the unconstitutionality of the Social Security Commissioner's removal provision is denied.

### IV.  CONCLUSION

        Based on the foregoing, the Court affirms the decision below.  Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (ECF No. 12) is denied;

    2.    Defendant's motion for summary judgment (ECF No. 14) is granted;

    3.    The Commissioner's final decision is affirmed; and

    4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  July 7, 2022

                              DENNIS M. COTA
                              UNITED STATES MAGISTRATE JUDGE